# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3239

_____

Christie Thomas                           *
and Scott Fisher,                         *
                                          *
        Appellants,             *
                                          *
    v.                            *  Appeal from the United States
                                          *  District Court for the Southern
Gregory Dickel, Joseph Leo,               *  District of Iowa.
and City of Des Moines, Iowa,             *
                                          *
        Appellees.              *

_____

Submitted:  March 15, 2000

Filed: May 30, 2000

_____

Before McMILLIAN, FLOYD R. GIBSON, and MORRIS  SHEPPARD ARNOLD,
    Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

    Christie Thomas and Scott Fisher sued the City of Des Moines, Iowa, and Des
Moines police officers Gregory Dickel and Joseph Leo, seeking damages under
42 U.S.C. § 1983 and under state law, claiming that the officers wrongfully stopped,

searched, and arrested them. The district court[1] held that the officers were entitled to qualified immunity for stopping the plaintiffs' car and that Ms. Thomas and Mr. Fisher failed to present any evidence of a department policy or custom on which to predicate municipal liability. The district court then granted the officers' motions for summary judgment on all of the plaintiffs' other constitutional claims and declined to exercise supplemental jurisdiction over the state-law claims.

Ms. Thomas and Mr. Fisher appeal from only that part of the district court's judgment holding that the officers were entitled to qualified immunity on the claim that stopping the plaintiffs' car violated the fourth amendment. We believe, for the reasons stated below, that the officers did not violate the plaintiffs' fourth amendment rights by stopping them, and we therefore affirm the judgment of the district court.

I.

The officers' stop of the plaintiffs' 1977 El Camino of course constituted a seizure within the meaning of the fourth amendment, *see Delaware v. Prouse*, 440 U.S. 648, 653 (1979), and was therefore "subject to the constitutional imperative that [the stop] not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). An investigative stop is constitutional if the police have reasonable suspicion "that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981); *see also United States v. Eustaquio*, 198 F.3d 1068, 1070 (8th Cir. 1999). Reasonable suspicion requires " 'a particularized and objective basis' for suspecting the person stopped of criminal activity," *Ornelas v. United States*, 517 U.S. 690, 696 (1996), quoting *Cortez*, 449 U.S. at 417, *see also Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), and the "level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause," *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

The relevant facts in this case are undisputed. Under Iowa law (with exceptions not relevant here), a vehicle driver and all front-seat passengers are required to wear a "properly adjusted and fastened safety belt or safety harness" while the vehicle is moving, *see* Iowa Code Ann. § 321.445.2. The officers testified that they followed the plaintiffs' car for one or two blocks but could not see shoulder harnesses pulled down and across the plaintiffs' bodies, and the plaintiffs themselves readily concede that their shoulder harnesses could not be seen from behind when in use because the harnesses were attached to the top of the seats and not to the roof of the car. The officers concluded that the plaintiffs might well be violating Iowa law and therefore stopped the car.

The plaintiffs argue that an officer driving behind a car may not stop that car just because he or she cannot see a shoulder harness pulled down and across a car's occupant. We agree, however, with the district court's observation that it is unreasonable to expect police officers to be aware of all of the idiosyncratic designs of vehicle seat-belt systems. It is common knowledge that many, if not most, automobiles now have shoulder harnesses, *see generally* Iowa Code Ann. § 321.445.1, requiring that "1966 model year or newer motor vehicles subject to registration in Iowa shall be equipped with safety belts *and* safety harnesses" (emphasis added); *see also State v. Aderholdt*, 545 N.W.2d 559, 563 (Iowa 1996), holding that a stop was supported by reasonable suspicion because, "although the officer could not see whether the vehicle's occupants might be wearing lap-type seat belts, it was apparent [that] they were not wearing shoulder harness belts." It is likewise common knowledge that most shoulder harnesses are visible from behind when deployed. We believe that the absence of a visible shoulder harness pulled down and across a driver provides police in Iowa with a reasonable, articulable suspicion that a crime is being committed, and therefore conclude that the stop in this case did not violate the plaintiffs' fourth amendment rights.

II.

In resisting this conclusion, namely, that the officers' stop of their car was legally justified, the plaintiffs place great emphasis on a state court's dismissal of the charges filed against them in connection with this incident. The state court suggested that Officer Leo presented false testimony when he testified that he saw a slack shoulder harness hanging from the roof of the car. The state court reasoned that because the harness was attached to the seat, it was impossible for the officer to see it hanging from the roof of the car; the state court then declared that the state had "no interest in sustaining or continuing a conviction which is based in whole or in part [on] false testimony." The state court "further specifically [found] that there was no legally sufficient probable cause to stop the El Camino." Although the state court dismissed the criminal charges against the plaintiffs on these grounds, that ruling has no bearing on our conclusion that the stop was based upon constitutionally reasonable suspicion.

First of all, the truthfulness and accuracy of Officer Leo's testimony are relevant only to the extent that that testimony relates to the existence of a particularized and objective basis for suspecting criminal activity. *See Ornelas,* 517 U.S. at 696, and *Conrod v. Davis*, 120 F.3d 92, 97-98 (8th Cir. 1997), *cert. denied*, 523 U.S. 1081 (1998). Since in this case the relevant predicate fact is whether the officers were able to see shoulder harnesses pulled down and across the plaintiffs' bodies, and since all of the parties agree that in this case the officers could not see shoulder harnesses pulled down and across the plaintiffs' bodies, the alleged falsity of Officer Leo's testimony is of no consequence whatever.

We further observe that during oral argument the plaintiffs conceded that they cannot invoke the principle of offensive collateral estoppel with regard to the state court's determination that the officers lacked probable cause, because the officers were not parties to the state criminal proceedings. *See Simmons v. O'Brien*, 77 F.3d 1093, 1096 (8th Cir. 1996), requiring that we look to state law to determine preclusion, and *Mizer v. State Automobile and Casualty Underwriters*, 195 N.W.2d 367, 370 (Iowa

1972), holding that collateral estoppel requires that the party against whom the estoppel is sought had a full opportunity to litigate the relevant issue. In any event, as the Supreme Court pointed out in *Alabama v. White*, 496 U.S. 325, 330 (1990), "[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." The issue in our case is thus different from the one in question in the state court proceeding.

A court deciding whether qualified immunity applies in a particular case " 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.' " *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000), quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Because the undisputed facts establish that the officers did not violate the plaintiffs' fourth amendment rights, we affirm the district court's grant of summary judgment on the officers' defense of qualified immunity.

III.

The plaintiffs base their municipal liability argument on the officers' admission that they were trained to "look for a shoulder harness being pulled across the body as a means to identify seatbelt violations." Because we have found that the officers' stop of the plaintiffs' car did not violate their fourth amendments rights, it follows that the plaintiffs' claim against the city (inadequate training and municipal custom) must likewise fail. *See Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994), holding that a city cannot be held liable on a failure-to-train theory unless a defendant police officer is found liable on an underlying substantive claim.

Finally, the plaintiffs argue that the district court erred when it declined to exercise supplemental jurisdiction over the state-law tort claims after it granted summary judgment on the federal claims. As we pointed out in *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990), however, federal courts should "exercise judicial restraint and avoid state law issues wherever possible." We believe, therefore, that the district court had ample discretion to decline supplemental jurisdiction over the plaintiffs' state-law claims. *See* 28 U.S.C. § 1367(c)(3), which provides that a district court "may decline to exercise supplemental jurisdiction ... if ... the district court has dismissed all claims over which it has original jurisdiction."

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. Although I too do not expect police officers "to be aware of all the idiosyncratic designs of vehicle seat-belt systems," supra at 3, I *do* expect police officers to be truthful in giving their reasons for making traffic stops. Here, Officer Leo testified under oath in state court that he and Officer Dickel stopped the plaintiffs' vehicle for violating the state seat belt law, after observing the slack, unbuckled shoulder belts hanging down inside the automobile. A state court judge examined the automobile and found it impossible to see the shoulder belts hanging down as Officer Leo described because the shoulder belts attach to the seats, not the roof area of the vehicle's interior. See Joint Appendix at 158-59 (state court's "Ruling on Defendants' Appeal and Order Vacating Judgments").[2]

---

[2]The state court dismissed the seat belt charges against the plaintiffs with prejudice, see Joint Appendix at 158-59 (state court's "Ruling on Defendants' Appeal and Order Vacating Judgments"), and no appeal was taken therefrom.

The majority opinion states that the truthfulness of Officer Leo's testimony is relevant "only to the extent that that testimony relates to the existence of a particularized and objective basis for suspecting criminal activity." Supra at 4. Obviously, if Officer Leo found it necessary to fabricate a reason for stopping the plaintiffs, then the officers likely had no particularized and objective basis for suspecting criminal activity at the time they initiated the stop. Because the logical conclusion is that the officers conducted the traffic stop without having a reasonable suspicion of criminal activity, I would hold that a Fourth Amendment violation occurred under clearly established law, or it is at least a matter of genuine factual dispute under clearly established law, and thus summary judgment on the basis of qualified immunity was improperly granted. Accordingly, I would reverse the district court's summary judgment order and remand the case for further proceedings.

By contrast, the majority concludes that "the alleged falsity of Officer Leo's testimony is of no consequence whatever." Id. In my opinion, the majority reaches that conclusion, and the conclusion that no Fourth Amendment violation occurred, through flawed reasoning. First, it is incorrect to assume, as the majority apparently does, that the actual knowledge and intent of the police officers at the time of the traffic stop becomes irrelevant so long as the court can rationalize, in hindsight, a lawful basis for the stop. See, e.g., United States v. Archer, 840 F.2d 567, 572 n.2 (8th Cir.) ("[i]n considering whether sufficient reasonable suspicion existed to justify a seizure, we will evaluate the circumstances known to [the officer] at the earliest point at which a seizure could be said to have occurred"), cert. denied, 488 U.S. 941 (1988). Second, even assuming for the sake argument that such bootstrap rationalizing were permissible, I disagree with the suggestion that the officers *could* have had a lawful basis for the traffic stop under the circumstances of this case.

The majority relies on the fact (readily admitted by the plaintiffs and confirmed by the state court's findings) that, upon viewing the plaintiffs' vehicle from behind, Officers Leo and Dickel "could not see shoulder harnesses pulled down and across the

plaintiffs' bodies." Supra at 3. The majority then declares that "[i]t is common knowledge that many, if not most, automobiles now have shoulder harnesses" and that "[i]t it likewise common knowledge that most shoulder harnesses are visible from behind when deployed."[3] Id. The majority next opines that, whenever a moving vehicle in Iowa is viewed from behind, "the absence of a visible shoulder harness pulled down and across a driver provides police in Iowa with a reasonable, articulable suspicion that a crime is being committed." Id. Thus, the majority concludes, "the stop in this case did not violate the plaintiffs' fourth amendment rights" because Officers Leo and Dickel could not have seen the shoulder belts, whether buckled or unbuckled, from behind the plaintiffs' vehicle. Id. I disagree.

As the majority clearly recognizes, in some automobiles there are no shoulder straps as part of the seat-belt system or, if shoulder straps exist, they are not visible from behind even when the seat belt is properly buckled. Thus, for *those* automobiles, the absence of a visible shoulder harness on the driver or a front-seat passenger, when the automobile is viewed from behind, is just as consistent with innocent behavior as it is with guilty behavior. I see no reason why those drivers and front-seat passengers must at all times be subject to random stops and investigations by the police simply because it is a matter of "common knowledge" that "most" cars (not theirs, of course) have shoulder belts that are visible from behind. I believe that police officers should, at a minimum, be expected to attempt to pull alongside the vehicle in question, to look for a shoulder strap extending across the person.[4] Therefore, I would hold that a police officer's inability to see a shoulder strap extending down and across the driver or front-seat passenger, upon viewing a moving vehicle strictly from behind, is *not* sufficient to

---

[3]There is nothing in the record to indicate how many vehicles on the roads of Iowa or nationwide do or do not feature shoulder belts that are visible from behind.

[4]During oral argument, counsel for the police officers conceded that the officers never attempted to pull the patrol car alongside the plaintiffs' car to determine whether or not shoulder belts were in fact being used.

support a reasonable, articulable suspicion that the seat belt is not being worn. For that reason, even if we assume (contrary to Officer Leo's testimony) that the police officers stopped the plaintiffs solely because they could not see from behind any seat belts pulled down and across the plaintiffs' shoulders, that, in my view, would not have been enough to support a reasonable, articulable suspicion that the plaintiffs were violating the Iowa seat belt law.[5]

Finally, I think it is essential to consider the policy implications of this case. Notwithstanding the fact that the police officers did find marijuana as a result of their traffic stop and investigation,[6] the record in this case undeniably indicates that one of the officers gave false testimony under oath in explaining the basis for the traffic stop. See Joint Appendix at 158-59 (State court's "Ruling on Defendants' Appeal and Order Vacating Judgments"). When a law enforcement officer gives a false explanation for exercising his or her police power, the American public will justifiably perceive it as an abuse of power, and that perception will undermine the authority and credibility of law enforcement officers everywhere. More importantly, when a court of law appears to put its stamp of approval on such police conduct, the American public will rightfully lose faith in the courts, and that loss of confidence will undermine our entire system of justice. I therefore disavow the conclusion that "the alleged falsity of Officer Leo's testimony is of no consequence whatever." Supra at 4. The end does not justify the means.

---

[5]If, however, those were the actual facts of the case, I would hold that the police officers were protected by qualified immunity because the law on this point was not clearly established at the time the traffic stop occurred.

[6]Counsel at oral argument informed the court that the marijuana charges against the plaintiffs were voluntarily dismissed following the dismissal of the seat belt charges. See also Joint Appendix at 184 (Affidavit of Joseph Leo) ("It is my understanding that following Judge Bergeson's ruling with regard to the seatbelt charge . . . the Polk County Attorney's office dismissed the pending marijuana charges against [the plaintiffs].").

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.