No. 2-09-0216      Filed: 5-26-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 08--CF--2094 |
| MARIO GALVEZ, | ) ) | Honorable Blanche Hill Fawell, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

Following a traffic stop, defendant, Mario Galvez, was charged with driving while his license was revoked (625 ILCS 5/6--303(a) (West 2008)). Defendant successfully moved to quash his arrest and to suppress evidence and the State now appeals. We affirm.

The relevant facts are straightforward and undisputed. At the hearing on defendant's motion, the arresting officer testified that he stopped defendant's vehicle after conducting a random registration check. During the check, the officer learned that the vehicle had two registered owners, one male (defendant) and the other female. The officer also learned that defendant's driver's license had been revoked. The officer stopped the vehicle without first pulling alongside it to determine whether the driver was male or female. In granting defendant's motion, the trial court reasoned that the officer's knowledge that the license of one of the two registered owners had been revoked did not

give the officer grounds to conduct a traffic stop. The State unsuccessfully moved for reconsideration of the trial court's order, and this appeal followed.

Generally, when reviewing a trial court's decision to quash an arrest and suppress evidence, we will reverse the trial court's findings of fact only if they are against the manifest weight of the evidence. People v. Walter, 374 Ill. App. 3d 763, 765 (2007). "However, a reviewing court will review de novo the ultimate question of whether a motion to quash and suppress should be granted on a given set of facts." Walter, 374 Ill. App. 3d at 765. Here, the facts are not in dispute. On the basis of those facts, the State argues that the arresting officer properly stopped defendant's vehicle pursuant to Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

In Terry, the United States Supreme Court held that the public interest in effective law enforcement makes it reasonable in some situations for law enforcement officers to temporarily detain and question individuals even though probable cause for an arrest is lacking. Terry authorizes a police officer to effect a limited investigatory stop where there exists a reasonable suspicion, based upon specific and articulable facts, that the person detained has committed or is about to commit a crime. Terry, 392 U.S. at 21-22, 20 L. Ed. 2d at 905-06, 88 S. Ct. at 1879-80. Illinois courts have held that a police officer may pull over a vehicle upon learning that the vehicle's registered owner has a license that has been suspended or revoked. See Village of Lake in the Hills v. Lloyd, 227 Ill. App. 3d 351 (1992); People v. Barnes, 152 Ill. App. 3d 1004 (1987). The Barnes court reasoned that although a vehicle may be operated by individuals other than its owner, "it is clear that the owner will do the vast amount of driving." Barnes, 152 Ill. App. 3d at 1006. The Barnes court therefore held that it was a reasonable inference that the owner was driving when the officer stopped the vehicle. Barnes, 152 Ill. App. 3d at 1006. In Lloyd, we adopted this reasoning, stating that, when the police

are aware that an owner of a vehicle has a revoked driver's license, "[c]ommon sense dictates that such information, even alone, is enough to provide a constitutional basis for stopping a vehicle or its occupants." Lloyd, 227 Ill. App. 3d at 354.

As the trial court noted, the vehicles in Barnes and Lloyd were each owned by just one individual. The trial court concluded that, because the vehicle in this case had two registered owners, the officer could not stop the vehicle simply because one of the owners was prohibited from driving. The trial court indicated that, because the officer knew that one owner was male and the other was female, and that it was the male owner's license that had been revoked, a stop would have been proper if the officer had first determined that a male was behind the wheel.

Although the driver in Lloyd was the sole owner of the vehicle, our opinion in that case included the following dicta:

"There may be situations in which it may be equally reasonable for an officer to conclude that someone other than the owner, such as a family member, is operating the vehicle. However, the crucial inquiry is not whether other conclusions are also reasonable, but rather whether it is reasonable to conclude that the owner is the driver of the vehicle. Although many vehicles in our society are co-owned, such co-ownership merely makes it equally reasonable to believe that either one owner or the other may in fact be driving a car." Lloyd, 227 Ill. App. 3d at 353-54.

The State urges us to follow this reasoning and extend the holding of Barnes and Lloyd to cases like this one, where one of multiple registered owners of a vehicle is legally prohibited from driving. We decline to do so. When one owner may not legally drive, the essential premise of the Lloyd dicta--that "co-ownership merely makes it equally reasonable to believe that either one owner

or the other may in fact be driving a car" (Lloyd, 227 Ill. App. 3d at 354)--is one that common sense suggests is most likely incorrect. It assumes that vehicle owners whose licenses have been suspended or revoked will not merely flout the law on occasion but will ignore the suspension or revocation entirely. While some vehicle owners may drive as much after a suspension or revocation as they did before, many if not most will either refrain altogether from driving or at least decrease the time spent behind the wheel. If one of two co-owners of a vehicle reduces his or her driving, the relative likelihood that he or she is the driver--at any particular moment when the vehicle is in operation--also decreases. In addition, if the co-owner whose license has been suspended or revoked drives less, the other co-owner may have the use of the vehicle more often. In that case, the odds will be even longer against finding the owner whose license has been suspended or revoked behind the wheel.

The presence of a vehicle on the road is not suspicious merely because one of two co-owners is prohibited from driving; it is to be expected that the co-owner whose license is in force would continue to operate the vehicle. Thus, the State's argument essentially turns the "reasonable suspicion" standard on its head by starting with the assumption that defendant is likely to have committed a criminal act and working backward from that assumption to glean suspicion from otherwise innocuous circumstances. Perhaps the starting assumption would be permissible if there were empirical evidence to support it--evidence that, on the whole, drivers with revoked or suspended licenses routinely ignore the restrictions on their driving privileges. Here, however, the officer did not claim that he acted on the basis of such evidence or that he was familiar with defendant's individual driving habits. Simply put, the stop was based on nothing more than a guess that defendant was a scofflaw and that there was a good chance that he was behind the wheel.

In denying the State's motion to reconsider the order granting defendant's motion to quash and suppress, the trial court noted:

"In this case I think it would have taken almost no effort on the part of the officer to pull forward and to determine whether or not the owner [sic] was male or female. I have weighed that against pulling innocent people over."

According to the State, "defendant never asserts why this additional burden would be prudent." We note that the leading authority on fourth amendment law has stated, "just as the probable cause determination may sometimes be affected by the officer's failure to acquire and consider other information readily at hand [citation], it would seem that there should likewise be occasions in which the equivocal situation should not justify a stop simply because there were rather obvious nonseizure alternatives immediately available for clarifying the matter." (Emphasis in original.) 4 W. LaFave, Search & Seizure §9.5(b), at 483 n.73 (4th ed. 2004).

To illustrate this point, Professor LaFave cited Thomas v. Dickel, 213 F.3d 1023 (8th Cir. 2000), in which a divided panel of the United States Court of Appeals for the Eighth Circuit upheld a traffic stop for failure to wear seatbelts where the police officer did not see any shoulder harnesses in a vehicle he was following. The shoulder harnesses were not visible from behind because they were attached to the back of the seats rather than the roof of the vehicle. The Thomas majority held:

"It is *** common knowledge that most shoulder harnesses are visible from behind when deployed. We believe that the absence of a visible shoulder harness pulled down and across a driver provides police *** with a reasonable, articulable suspicion that a crime is being committed, and therefore conclude that the stop in this case did not violate the plaintiffs' fourth amendment rights." Thomas, 213 F.3d at 1025.

According to Professor LaFave, however, "[r]ather convincing is the dissent's observation that in such circumstances 'police officers should, at a minimum, be expected to attempt to pull alongside the vehicle in question, to look for a shoulder strap extending across the person.' " 4 W. LaFave, Search & Seizure §9.5(b), at 483 n.73 (4th ed. 2004), quoting Thomas, 213 F.3d at 1028 (McMillian, J., dissenting). Similar reasoning applies here. The State protests that, in some cases, even after pulling alongside a vehicle, an officer may still be unable to identify the driver as the co-owner whose driving privileges have been restricted. The observation merely underscores that each case must be decided on its own facts and, more importantly, that the reasonable suspicion standard does not function as a guarantee that no crime will ever go undetected. If the facts available to an officer do not provide reasonable suspicion that a crime is afoot, the officer may not effect a stop merely because he or she has exhausted all means of acquiring additional information.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.