COURT OF APPEALS
DECISION
DATED AND FILED

February 7, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP594-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF212

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

JONATHAN A. TAYLOR,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: MARC A. HAMMER, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jonathan Taylor appeals a judgment of conviction for operating a motor vehicle after revocation and two counts of felony bail

jumping. Taylor also appeals an order denying his motion for postconviction relief without a hearing. Taylor contends that his trial attorney was constitutionally ineffective by failing to file a timely suppression motion asserting that the officer who stopped Taylor's vehicle lacked reasonable suspicion for the stop.

¶2 We conclude that Taylor has not demonstrated either deficient performance or prejudice because the record conclusively shows that any such suppression motion would have been properly denied. We therefore affirm Taylor's judgment of conviction and the order denying postconviction relief.

## BACKGROUND

¶3 Just after midnight on November 14, 2018, Green Bay Police Officer Kendal Herwald was on patrol when he encountered a gray Ford Focus driving on Mason Street in the City of Green Bay. Herwald completed a routine check of the vehicle's registration on his squad car's computer, which showed that the vehicle was registered to two individuals—Taylor and Linda Taylor, who is Taylor's mother.[1] Herwald ran registration checks on Taylor and Linda and obtained physical descriptions of them both. Taylor's description stated that he was a six-foot-tall white male, weighed 200 pounds, had brown hair and hazel eyes, and was born in 1991. In addition, Taylor's registration check showed that his driver's license was revoked.

---

[1] Throughout this opinion, we refer to the appellant as "Taylor" and to Linda Taylor as "Linda."

2

¶4 After learning that Taylor's license was revoked, Herwald drove next to the driver's side of the Ford Focus and observed that the individual driving the vehicle was male and matched Taylor's physical description, race, and approximate age. Herwald then initiated a traffic stop based on his suspicion that the person driving the Ford Focus had a revoked license. During the stop, Herwald confirmed that Taylor was the person driving the Ford Focus.

¶5 The State subsequently charged Taylor with one count of operating a motor vehicle after revocation and two counts of felony bail jumping.[2] Taylor was represented by a series of three attorneys during the circuit court proceedings. On January 13, 2020—the day before Taylor's jury trial was scheduled to begin—Taylor's third attorney filed a motion to suppress all evidence obtained as a result of the traffic stop, arguing that Herwald did not have a legal basis to stop Taylor's vehicle. The court refused to consider the suppression motion because it was filed "on the eve of trial."[3] The jury subsequently found Taylor guilty of all three of the charges against him.

¶6 Taylor moved for postconviction relief, arguing that his third attorney was constitutionally ineffective by failing to file a timely suppression motion challenging the legality of the traffic stop. The circuit court denied Taylor's motion without holding an evidentiary hearing. The court concluded that

---

[2] At the time of the traffic stop, Taylor was released on bond in two pending felony cases, and his bond conditions in both of those cases prohibited him from committing additional violations of the law.

[3] The Brown County Circuit Court's local rules require suppression motions to be filed and heard "no later than seven days prior to the time set for the trial." *See* BROWN CNTY. CIR. CT. R. 502, https://www.browncountywi.gov/departments/clerk-of-circuit-court/general-information/local-court-rules/.

Taylor's third attorney did not perform deficiently by failing to file a timely suppression motion because the motion "was a loser," and counsel therefore made a reasonable strategic decision to delay filing the motion in order to preserve a favorable plea offer for Taylor.[4]  The court also concluded Taylor could not show that he was prejudiced by counsel's alleged error because a timely suppression motion "would have failed."  Taylor now appeals.

## DISCUSSION

¶7     Taylor contends that the circuit court erred by denying his postconviction motion without an evidentiary hearing.  A circuit court has discretion to deny a postconviction motion without an evidentiary hearing "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief."  *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  On appeal, we independently review whether a postconviction motion alleged sufficient facts so as to require an evidentiary hearing.  *Id.*

¶8     Taylor's postconviction motion asserted that his third trial attorney was constitutionally ineffective by failing to file a timely suppression motion challenging the legality of the traffic stop.  To prevail on an ineffective assistance claim, a defendant must show both that his or her attorney performed deficiently and that the deficient performance prejudiced the defense.  *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838.  To demonstrate deficient

---

[4] Taylor ultimately decided not to accept the State's plea offer, which was contingent on Taylor not filing any suppression motions.

performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *Id.*, ¶28. To establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Id.*, ¶32.

¶9 Notably, an attorney's failure to make a motion that would have been properly denied is neither deficient nor prejudicial. *See State v. Berggren*, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110 (counsel does not perform deficiently by failing to raise a legal challenge that would have been properly denied); *State v. Simpson*, 185 Wis. 2d 772, 784, 519 N.W.2d 662 (Ct. App. 1994) (a defendant is not prejudiced by counsel's failure to make a motion that would have been denied). As explained below, the record in this case shows that a timely motion to suppress the evidence obtained as a result of the traffic stop would have been properly denied. As such, the record conclusively establishes that Taylor's third trial attorney was not constitutionally ineffective by failing to file a timely suppression motion challenging the legality of the stop. Accordingly, the circuit court properly denied Taylor's postconviction motion without an evidentiary hearing.

¶10 A police officer may conduct a traffic stop "when, under the totality of the circumstances, he or she has grounds to reasonably suspect that a crime or traffic violation has been or will be committed." *State v. Popke*, 2009 WI 37, ¶23, 317 Wis. 2d 118, 765 N.W.2d 569. The officer must be able to point to specific and articulable facts, which, together with reasonable inferences from those facts, reasonably warrant the intrusion of the stop. *Id.* "The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was

5

committing, or is about to commit a crime." *Id.* (citation omitted). Whether a particular set of facts gives rise to reasonable suspicion justifying a temporary investigatory stop is a question of law that we review independently. *State v. Sherry*, 2004 WI App 207, ¶4, 277 Wis. 2d 194, 690 N.W.2d 435.

¶11 This court has previously held that "an officer's knowledge that a vehicle's owner's license is revoked will support reasonable suspicion for a traffic stop so long as the officer remains unaware of any facts that would suggest that the owner is not driving." *State v. Newer*, 2007 WI App 236, ¶2, 306 Wis. 2d 193, 742 N.W.2d 923. In *Newer*, an officer stopped a vehicle after learning that the vehicle was registered to Newer, whose driver's license was revoked. *Id.*, ¶3. Before stopping the vehicle, the officer "did not know whether Newer was driving the car" and "did not know the gender of the driver." *Id.*, ¶4. Nevertheless, we concluded it is "a reasonable assumption that the person driving a particular vehicle is that vehicle's owner." *Id.*, ¶7. We acknowledged, however, that if an officer "comes upon information suggesting that the assumption is not valid in a particular case, for example that the vehicle's driver appears to be much older, much younger, or of a different gender than the vehicle's registered owner, reasonable suspicion would, of course, dissipate." *Id.*, ¶8.

¶12 More recently, the United States Supreme Court reached the same conclusion in *Kansas v. Glover*, 589 U.S. ___, 140 S. Ct. 1183 (2020). The *Glover* Court addressed "whether a police officer violates the Fourth Amendment by initiating an investigative traffic stop after running a vehicle's license plate and learning that the registered owner has a revoked driver's license." *Id.* at 1186. The Court held that "when the officer lacks information negating an inference that the owner is the driver of the vehicle, the stop is reasonable." *Id.*

¶13 Taylor argues that this case is distinguishable from *Newer* and *Glover* because, unlike in those cases, the vehicle here had two registered owners rather than one. Taylor contends that in a case where a vehicle has two registered owners, the fact that one owner's license is revoked does not permit a reasonable inference that the person driving the vehicle lacks a valid license.

¶14 Two unpublished Wisconsin cases have addressed the application of the *Newer* rule in circumstances where the stopped vehicle had more than one registered owner.[5] In *State v. Heinrich*, No. 2015AP1524-CR, unpublished slip op. ¶2 (WI App Feb. 25, 2016), an officer saw a vehicle being driven at about 11:00 p.m. and learned that the vehicle had two registered owners, both of whom were male. One of the registered owners, Heinrich, had a 1993 birthdate, while the other had a 1989 birthdate. *Id.* The officer learned that the vehicle's older owner had an unrestricted driver's license, but Heinrich had an occupational license that prohibited him from driving at 11:00 p.m. *Id.* The street was dark, and the officer could not see inside the vehicle. *Id.*, ¶3. The officer stopped the vehicle to determine whether Heinrich was driving and learned that the driver was, in fact, Heinrich. *Id.*

¶15 Heinrich argued that the officer lacked reasonable suspicion for the stop because the vehicle had two registered owners and, accordingly, "there could not have been a greater than 50 percent chance that the owner with the invalid license was operating the vehicle." *Id.*, ¶10. We rejected this argument, noting that reasonable suspicion "need not be established at a level exceeding a 50

---

[5] An unpublished opinion issued on or after July 1, 2009, and authored by a single judge or by a member of a three-judge panel may be cited for its persuasive value. WIS. STAT. RULE 809.23(3)(b) (2019-20).

percent probability." *Id.*, ¶11. We further concluded that "the reasoning supporting reasonable suspicion in *Newer* applies to a vehicle with two registered owners when only one is not properly licensed to drive." *Heinrich*, No. 2015AP1524-CR, ¶11. We explained that when a vehicle has two registered owners, one of whom may not lawfully operate a vehicle, and there is "no objective reason for an officer not to suspect" that the person driving the vehicle is the disqualified registered owner, a "sufficient probability" exists to constitute reasonable suspicion to stop the vehicle. *Id.*, ¶13 (citation omitted).

¶16    We also addressed a scenario involving multiple registered owners in *State v. Vitek*, No. 2015AP421-CR, unpublished slip op. (WI App Oct. 27, 2015). In *Vitek*, an officer ran a registration check on a passing vehicle and learned that the operating privileges of "one of the registered owners" were suspended. *Id.*, ¶3. At the suppression hearing, the officer testified that she could remember that the owner whose operating privileges were suspended was a male. *Id.* The officer could not, however, recall how many registered owners of the vehicle there were in total. *Id.* The officer could not see whether the driver of the vehicle was male, so she initiated a traffic stop to determine who was driving the vehicle. *Id.* She subsequently identified Vitek as the driver, and after further investigation, she arrested Vitek for operating a motor vehicle while intoxicated. *Id.*

¶17    On these facts, we concluded the State had not met its burden to show that the stop was supported by reasonable suspicion. *Id.*, ¶1. We concluded that *Newer* was not directly on point because *Newer* involved a stop of a vehicle with only one registered owner. *Vitek*, No. 2015AP421-CR, ¶¶9-10. We emphasized that in Vitek's case, it was unclear how many individuals were registered owners of the vehicle in question. *Id.*, ¶10. We explained:

> Under these facts, we cannot properly evaluate the reasonableness of the inference that the suspended owner was the person driving without knowing how many other owners could have been lawfully operating the vehicle. There could have been one other owner, there could have been two, there could have been four, or whatever number. The record is silent in this regard. At some point the inference underlying *Newer* becomes unreasonable when there are registered owners of the same vehicle who do not have a suspended license.

*Vitek*, No. 2015AP421-CR, ¶11. Because the State had failed to show how many individuals were registered owners of the vehicle in *Vitek*, we stated that we did not need to decide at what precise point the inference underlying *Newer* becomes unreasonable. *Vitek*, No. 2015AP421-CR, ¶12. Thus, we did not conclusively address whether an officer's knowledge that one of two registered owners of a vehicle has a revoked license is sufficient, in and of itself, to give rise to reasonable suspicion.

¶18 *Heinrich* and *Vitek* support a conclusion that the stop in this case was supported by reasonable suspicion. The *Heinrich* court concluded that in a case involving a vehicle with two registered owners, one of whom does not have a valid driver's license, it is reasonable for an officer to infer that the person driving the vehicle is the registered owner without a valid license, as long as there are no objective facts contradicting that reasonable inference. *Heinrich*, No. 2015AP1524-CR, ¶13. *Vitek*, in turn, concluded that reasonable suspicion does not exist when a vehicle has an unspecified number of registered owners, only one of whom does not have a valid license. *Vitek*, No. 2015AP421-CR, ¶¶11-12. Here, Herwald knew that Taylor's vehicle had only two registered owners and that one of those individuals had a revoked license. Accordingly, this case is more like *Heinrich* than *Vitek*.

¶19 Moreover, the *Vitek* court expressly recognized that the stop in that case may have been justified if the officer "was able to match the driver's characteristics to a description of the suspended owner." *Vitek*, No. 2015AP421-CR, ¶14. In this case, Herwald knew that the vehicle in question had two registered owners—one male and one female. Herwald obtained Taylor's physical description, which stated that Taylor was a white male, six feet tall, weighed 200 pounds, had brown hair and hazel eyes, and was born in 1991. Herwald then drove next to the driver's side of the vehicle and confirmed that the driver was male and matched Taylor's physical description, race, and approximate age. Thus, Herwald did exactly what the *Vitek* court suggested: before stopping the vehicle, he matched the driver's characteristics to the description of the registered owner whose license was revoked. *See id.* Under these circumstances, the record conclusively shows that Herwald had reasonable suspicion to stop Taylor's vehicle.

¶20 In support of his argument to the contrary, Taylor directs our attention to authority from outside our jurisdiction. *See **People v. Galvez***, 930 N.E.2d 473 (Ill. App. Ct. 2010). In *Galvez*, an officer conducted a registration check on a vehicle and learned that it had two registered owners—one male and one female—and that the male owner's driver's license was revoked. *Id.* at 474. The officer then stopped the vehicle without making any effort to determine whether the driver was male or female. *Id.*

¶21 The Appellate Court of Illinois concluded that the officer lacked reasonable suspicion to stop the vehicle. *Id.* at 475-76. The court explained:

> The presence of a vehicle on the road is not suspicious merely because one of two co-owners is prohibited from driving; it is to be expected that the co-owner whose license is in force would continue to operate the vehicle. Thus, the

> State's argument essentially turns the "reasonable suspicion" standard on its head by starting with the assumption that defendant is likely to have committed a criminal act and working backward from that assumption to glean suspicion from otherwise innocuous circumstances. Perhaps the starting assumption would be permissible if there were empirical evidence to support it—evidence that, on the whole, drivers with revoked or suspended licenses routinely ignore the restrictions on their driving privileges. Here, however, the officer did not claim that he acted on the basis of such evidence or that he was familiar with defendant's individual driving habits. Simply put, the stop was based on nothing more than a guess that defendant was a scofflaw and that there was a good chance that he was behind the wheel.

*Id.*

¶22    Based on *Galvez*, Taylor argues that when Herwald learned that the vehicle in question was registered to two owners, that information actually "decreased the probability that … Taylor was the driver." According to Taylor, because Herwald "now knew information suggesting that … Taylor would not be driving the vehicle … no reasonable suspicion existed." Taylor asserts that "in order for reasonable suspicion to exist in the two-co-owner scenario, the officer must possess additional information indicating [that] one owner is more likely the driver at the time."

¶23    We reject Taylor's argument based on *Galvez* for at least three reasons. First, *Galvez*, a decision issued by the Appellate Court of Illinois, is not binding precedent in Wisconsin. *See State v. Muckerheide*, 2007 WI 5, ¶7, 298 Wis. 2d 553, 725 N.W.2d 930.

¶24    Second, we do not find the *Galvez* court's reasoning compelling, particularly in light of the United States Supreme Court's subsequent decision in *Glover*. The *Glover* Court concluded that an officer may draw a "commonsense

inference" that the person driving a vehicle is its registered owner. *Glover*, 140 S. Ct. at 1188. While the Court acknowledged that "the registered owner of a vehicle is not always the driver," the Court stated that fact "does not negate the reasonableness" of the inference that the driver is the vehicle's registered owner. *Id.* The Court further noted that the reasonable suspicion inquiry "'falls considerably short' of 51% accuracy" and that "[t]o be reasonable is not to be perfect." *Id.* (alteration in original; citations omitted). The *Glover* Court's analysis suggests that the reasonable suspicion standard is not as exacting as Taylor—or the *Galvez* court—appears to believe.

¶25 Third, *Galvez* is factually distinguishable from this case because the officer in *Galvez* knew that the vehicle had two registered owners—one male and one female—but did nothing to confirm whether the vehicle's driver was male or female. *See Galvez*, 930 N.E.2d at 474. Here, in contrast, Herwald drove alongside the vehicle and confirmed not only that the driver was male, but also that the driver matched the physical description of the vehicle's male registered owner. Thus, the *Galvez* court's conclusion that the officer in that case lacked reasonable suspicion does not compel a conclusion that Herwald lacked reasonable suspicion under the circumstances of this case.

¶26 Taylor also argues that because he and Linda shared similar physical characteristics at the time of the stop, it was not reasonable for Herwald to infer that Taylor, rather than Linda, was driving the vehicle. Specifically, Taylor contends that at the time of the stop, he and Linda both had "longer" dark hair, both weighed about 200 pounds, and were within two inches of one another in height. Taylor also asserts that because Herwald drove along the driver's side of the vehicle, his view of the driver would have been limited to the driver's side profile. In addition, Taylor observes that Herwald "made his determinations by

12

seeing inside the moving vehicle in the dark." Taylor argues that under these circumstances, "it very well likely could have been impossible to distinguish between [Taylor's and Linda's] physical descriptions on that night."

¶27 This argument fails because "[i]f a reasonable inference of unlawful conduct can be objectively discerned … officers may temporarily detain [an] individual to investigate, notwithstanding the existence of [an] innocent inference which could be drawn." *State v. Young*, 212 Wis. 2d 417, 430, 569 N.W.2d 84 (Ct. App. 1997). Here, any physical similarity between Taylor and Linda may have given rise to an innocent inference that Linda was driving the vehicle. As explained above, however, the facts also gave rise to a competing reasonable inference of unlawful conduct—i.e., that Taylor, whose driver's license was revoked, was the driver. Under these circumstances, Herwald was not required to rule out the innocent inference that Linda was driving before initiating the traffic stop. *See State v. Waldner*, 206 Wis. 2d 51, 59, 556 N.W.2d 681 (1996) ("[P]olice officers are not required to rule out the possibility of innocent behavior before initiating a brief stop.").

¶28 Because the record conclusively shows that Herwald had reasonable suspicion to stop Taylor's vehicle, a motion to suppress based on an argument that Herwald lacked reasonable suspicion for the stop would have been properly denied. Consequently, Taylor's third trial attorney was not constitutionally ineffective by failing to file a timely suppression motion challenging the legality of the stop, and the circuit court properly denied Taylor's postconviction motion without an evidentiary hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).